# COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF UNDER 42 U.S.C. §1983

*— For Violations of the Fourteenth Amendment's Due Process Clause, Familial Integrity Rights, and Texas Family Code §261.302*

## I. PRELIMINARY STATEMENT     1:25CV01142 DAE

This action is brought by the natural mother and natural father of offspring who were forcibly taken from their private dwelling on June 26, 2025, pursuant to an emergency removal order issued ex parte, without their knowledge, presence, or participation. The justification for this emergency action was rooted in hearsay, delivered by third-party individuals acting outside lawful boundaries and in direct violation of privacy protections. This narrative—contrived on or about June 19—was formalized in a citation dated June 20, which led to an ex parte hearing. At no time were the natural mother or natural father permitted to present evidence, medical files, or firsthand clarification that would have disqualified the presumption of "imminent risk." No peer review or lawful investigation preceded the issuance of this removal order. On July 9, 2025, a hearing took place—purported to satisfy the 14-day rule under Texas Family Code § 262.201. However, this hearing did not meet the lawful requirements set forth by that statute. No evidence was presented to substantiate the original claims. No witnesses were called. No cross-examinations were permitted. No findings of fact or good cause justifying continued separation were entered into the record. What occurred was not a lawful adversarial hearing, but a continuation of harm under the color of law. The State's failure to provide due process within the 14-day statutory window constitutes a material breach of lawful authority. At present, no verified emergency exists, and no lawful jurisdiction remains to continue holding the offspring of the undersigned in State custody. This is a formal, necessary request to this higher court for immediate remedy. We do not seek favor or special privilege—only lawful correction. The Constitution and Texas law are clear. The 14-day rule was violated. Due process was denied. Jurisdiction has expired. Our offspring must be returned.

## II. Standing of Plaintiff Alysha Robinson (Natural Mother)

Plaintiff **Alysha Robinson**, as the **natural mother** of the minor **offspring**, has standing to bring this suit under 42 U.S.C. § 1983 for the breach of duty to uphold the Constitution, resulting in injury to her natural rights the Constitution obligates them to protect. She is a resident of the State of Texas and at all relevant times has had full legal and custodial rights over her **offspring**. The wrongful seizure of her **offspring**, the failure to provide due process in the removal proceedings, and the ongoing denial of her rights to visitation and placement of her **offspring** with appropriate relatives, constitutes a direct violation of her **parental rights** protected by the **Due Process Clause of the Fourteenth Amendment** and by the **constitutional guarantee of family integrity.**

As the **natural mother**, Plaintiff Alysha: Robinson's relationship with her **offspring** is constitutionally protected. Her standing to bring this action arises from her rights to direct the care, custody, and upbringing of her **offspring**, which have been unlawfully interfered with by the actions of the Defendants, without due process or lawful cause. The violation of these rights entitles her to seek redress for the harm and suffering caused by the wrongful actions of the Defendants.

## II. Standing of Plaintiff Quincy-Norman:  Stewart (Natural Father)

Plaintiff **Quincy-Norman Stewart IV,** As the natural father of the minor offspring, he possesses standing to bring this suit under 42 U.S.C. § 1983 for the breach of public duty to uphold the Constitution, resulting in injury to rights that are inherent, unalienable, and protected by that supreme law. Plaintiff Quincy-Norman: Stewart is a **non-resident alien,** but he retains constitutionally protected rights as a father under the **Due Process Clause of the Fourteenth Amendment.** As natural father, he has a fundamental interest in the care, custody, and relationship with his **offspring**, which is violated by the unlawful removal and continued detention of his **offspring**.

Plaintiff's non-resident alien status does not preclude his standing to seek redress for the unconstitutional actions taken against him, nor does it limit his ability to assert claims under 42 U.S.C. § 1983. He has a vested interest in his offspring's welfare and a right to challenge governmental actions that deprive him of his familial integrity. The wrongful conduct of the Defendants—culminating in the seizure of his offspring and the failure to grant him due process in the related proceedings—has caused significant harm to his familial rights and well-being. As such, Plaintiff is entitled to seek appropriate relief for the violations of his rights.

## III. PARTIES

**Plaintiff Quincy-Norman: Stewart IV** the natural father of the minor offspring unlawfully removed by defendants. As their natural father, he holds protected liberty interests in familial association under the First and Fourteenth Amendments, which defendants infringed without due process.

**Plaintiff Alysha: Robinson** Plaintiff Alysha: Robinson is the natural mother of the minor offspring, with an unalienable duty and sacred right to protect, nurture, and maintain the familial bond—rights protected, not granted, under the Constitution.

- **Defendant Aurora Martinez Jones** is a judge of the 126th District Court in Travis County, Texas. She is sued in her individual and official capacities for actions taken outside the scope of judicial immunity, including ex parte orders and the denial of a timely adversarial hearing required under Texas Family Code § 262.201 and the Fourteenth Amendment.
- **Defendant Raevn Works** is the CPS Supervisor for Region 7, employed by DFPS. She is sued in her individual and official capacities for failing to respond to Plaintiffs' Voluntary Inquiry Letter during the preliminary investigation. Her failure to acknowledge or forward said correspondence materially contributed to Plaintiffs being wrongfully categorized as "unresponsive," setting the stage for the unlawful seizure.
- **Defendant Natalie Taylor** is the Regional Director of CPS/DFPS for Region 7 and the direct supervisor of Defendant Works. Despite receiving copies of the Voluntary Inquiry Letter and subsequent notices, she took no corrective action. By failing to act, Defendant Taylor became an accessory through inaction —complicit in the unlawful deprivation of rights she was oath-bound to guard. She is sued in both her individual and official capacities for supervisory liability and willful failure to intervene
- **Defendant DFPS SI Kevin Jones** is a state agency and is named for the purpose of injunctive and declaratory relief. The agency's policies, practices, or customs were a moving force behind the deprivation of Plaintiffs' federal rights.
- **Defendant DFPS SI Kathy Heald** On June 26, Defendant Heald was present at the **warrantless, extrajudicial removal** of Plaintiff's minor offspring. When Plaintiff lawfully inquired as to the children's destination, Defendant Heald responded they were being transported to a local hospital. Upon further questioning regarding their ultimate placement, Heald **deliberately misrepresented DFPS policy**, stating they would be placed in "foster care." Plaintiff, invoking her lawful right to redress, cited DFPS's own procedural manual, which mandates **placement with verified kinship caregivers prior to any foster assignment**. Only then did Defendant Heald concede that kinship placement was an option—contingent upon Plaintiff providing names.

On July 9, Defendant Heald again **knowingly misled** the judiciary, falsely asserting before Judge Aurora Martinez Jones that the children were "thriving" in foster care. In fact, just days prior, Plaintiff had received a distressed call from her eldest son, during which he **pleaded, "get me out of here,"** and made direct contact with Defendant Heald himself—a clear, urgent cry for help from a terrified minor.

These **deliberate and repeated misrepresentations**—in the field and under oath—evidence not a commitment to child welfare, but rather to **narrative control, procedural deception, and the extraction of coerced compliance**. Defendant Heald's conduct constitutes not only a **violation of due process** but an **obstruction of justice** and an affirmative act of **psychological and procedural harm** against both the Plaintiff and her children. Such behavior falls outside the scope of qualified immunity and is actionable under both state and federal law.

- **Defendant Travis County** is a local governmental entity responsible for the conduct of its officers and judicial actors. On or about June 25, it issued a warrant for the arrest of Plaintiff Quincy-Norman: Stewart IV based on a report from June 19—six days after the alleged incident and one day before the unconstitutional seizure of the minor offspring. Travis County is further named for its failure to respond to public records requests in violation of Texas Government Code § 552.
- **Defendant City of Lago Vista** is named under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), for the actions and omissions of its officers and employees, including but not limited to members of the Lago Vista Police Department who appeared at Plaintiff's residence on or around June 19 in tandem with CPS agents, allegedly for a "knock and talk." This intervention—unwarranted, unannounced, and conducted without exigent circumstances—was materially influenced by a maintenance worker identified only as "Buckie," who was scheduled to perform repairs at the temporary condo residence that day. Within approximately ten minutes of Buckie's arrival to fix a sink, both CPS and Lago Vista PD arrived at the door. Buckie remained inside the residence throughout the incident, continuing his work without inquiry or alarm, and was observed texting during the visit. In a subsequent petition submitted to justify state intervention, Buckie's statements—recounting alleged behaviors of Plaintiff and family members inside the home—were cited as supporting evidence. Upon information and belief, these statements were either communicated directly to CPS or transmitted through the property's public relations manager, Melinda. Plaintiff contends that Buckie's real-time reporting was conducted in concert with, or at the direction of, state actors, and materially contributed to the deprivation of constitutionally protected rights. While not currently named as a defendant, Plaintiff reserves the right to amend this complaint upon discovery of further identifying and corroborating evidence.

Furthermore, Plaintiff asserts that the issuance of a warrant for Plaintiff Quincy-Norman: Stewart IV's arrest on the charge of Aggravated Kidnapping was predicated, in material part, on statements made or transmitted by an individual identified only as "Buckie," a maintenance worker affiliated with the Lago Vista property management company. These statements, incorporated into a later petition, constituted the only firsthand "eyewitness" account presented by a non-officer to describe alleged conduct occurring within the home. Notably, the Texas Department of Family and Protective Services (DFPS) characterized this conduct as "interference with governmental function"—a charge codified under **Texas Penal Code § 38.15** as a Class B misdemeanor: *"A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with a peace officer... while the peace officer is performing a duty or exercising authority imposed or granted by law."*

Despite this statutory limitation to nonviolent misdemeanor interference, Lago Vista officers—relying solely on Buckie's unverified, contextually suspect account—elevated the allegations to **Aggravated Kidnapping**, a first-degree felony under **Tex. Penal Code § 20.04**, without obtaining corroborating evidence or an independent statement from a qualified government agent. This unsupported escalation occurred without exigent circumstances, verified threat, or immediate risk of harm—undermining any claim of probable cause or lawful justification.

The U.S. Supreme Court has made clear that *"the deliberate or reckless misrepresentation of facts by law enforcement to secure a warrant violates the Fourth Amendment"* (**Franks v. Delaware**, 438 U.S. 154, 1978). Moreover, *"police officers may not act upon third-party accusations without sufficient indicia of reliability and corroboration"* (**Whiteley v. Warden**, 401 U.S. 560, 568 (1971); see also **Illinois v. Gates**, 462 U.S. 213, 238–239 (1983)). Where, as here, the state elevates a misdemeanor-level claim to a felony arrest **without credible evidence or proper procedural safeguards**, the conduct may constitute not only a violation of the Fourth and Fourteenth Amendments but also **malicious prosecution** and **abuse of process** actionable under 42 U.S.C. §1983 (see **Albright v. Oliver**, 510 U.S. 266 (1994); **Manuel v. City of Joliet**, 580 U.S. 357 (2017)). This misuse of a private third party as a proxy for state action also triggers **Monell liability**, as it reflects a pattern of unconstitutional delegation or the failure to adequately supervise and train officers to distinguish between lawful probable cause and improper reliance on hearsay (see **Monell v. Dept. of Soc. Servs.**, 436 U.S. 658 (1978)). At minimum, it demonstrates a systemic failure by the City of Lago Vista and its officers to meet the constitutional threshold required for such a grave deprivation of liberty.

- **Defendant Williamson County** is a local governmental entity whose officers executed the aforementioned warrant on June 26 using excessive force, including SWAT tactics and a flash-bang grenade, against an unarmed man, for a non-violent, non-weapon, non-indicted allegation of "Aggravated Kidnapping - Interference with Public Duties." Williamson County is also liable for failing to respond to multiple FOIA/Public Information Act requests regarding its role in the events on June 26, in breach of the statutory 10-day deadline.
- **Defendant Melinda Crueyro**, a property manager employed by North Shore Vacation Rentals, unlawfully entered Plaintiffs' residence without a warrant, court order, or consent. During this unauthorized entry, she photographed Plaintiffs' private space, including a religious divination altar—an act that constitutes desecration of Plaintiffs' sacred space. These photographs were used, or intended to be used, as evidence in the June 20 petition, contributing to a defamatory narrative falsely portraying Plaintiffs as evasive or attempting to flee.

  Furthermore, on June 19, Defendant Crueyro was present at Plaintiffs' residence attempting to gain unwarranted entry under the guise of a "random knock and talk," as described in the petition. This incident was mischaracterized and served to justify escalating state intervention.

  The unlawful acquisition and use of these photographs caused Plaintiffs profound psychological harm and violated their right to privacy, religious freedom, and familial integrity.

- **Defendant North Shore Vacation Rentals** is the employer of Defendant Crueyro and is sued for its role in authorizing or failing to prevent unconstitutional entry and participation in unlawful state action.

## IV. Factual Allegations

**Unlawful Seizure and Retention, Fabricated Narrative, and Excessive Force Without Legal Justification**

1. On June 26, 2025, Plaintiffs were present at Sleep Inn & Suites Round Rock – Austin North (located at 1980 S I-35 Frontage Rd, Round Rock, Texas). They were residing there temporarily with their offspring, awaiting pediatric wellness checkups scheduled for the following days Friday June 27 and Monday June 30, 2025.
2. At approximately 8:45–9:00 PM, while the natural father, Quincy-Norman: Stewart IV, was alone outside the hotel, a SWAT team from the Round Rock Police Department, without prior warning, visible warrant, initiated a tactical operation at the premises.
3. Law enforcement officers approached Hotel Room 208, occupied by Plaintiff Alysha Robinson and her children. Upon Plaintiff's request to see a judicial warrant and identify whom they were seeking, the officers failed to produce either. Within minutes, and while the door was partially opened with the latch engaged, they forcibly kicked it in.
4. Defendants alleged in subsequent petitions that Plaintiff engaged in a four-hour stand-off, refusing to comply with a court order and necessitating SWAT intervention. This narrative is demonstrably false. In reality, Plaintiff was briefly detained and released on her own recognizance—without arrest, charges, or any formal accusations of obstruction or resistance. Had such a prolonged and combative standoff truly occurred, standard law enforcement procedure would have resulted in Plaintiff's arrest and likely prosecution. The absence of such consequences exposes the petition's account as a fabrication, manufactured post hoc to justify the unlawful removal and continued separation from her offspring. This conduct constitutes a clear violation of Plaintiff's due process rights and mirrors the kind of official deception addressed in *Franks v. Delaware*, 438 U.S. 154 (1978), wherein the Supreme Court held that a Fourth Amendment violation occurs when government actors knowingly and intentionally, or with reckless disregard for the truth, include false statements in an affidavit to procure legal authority. By submitting materially false narratives to the court in order to create legal cover for their actions, Defendants engaged in exactly the type of constitutional misconduct that *Franks* prohibits.
5. Outside Plaintiff Quincy-Norman: Stewart IV, unarmed and compliant, was flash-banged by SWAT officers, then slammed to the ground and handcuffed. He posed no threat, offered no resistance, and was not engaged in any criminal behavior. The deployment of militarized force under these circumstances was neither necessary nor justified. It constituted an egregious overreach of state authority—precisely

the kind of government misconduct the Constitution was designed to restrain. The Fourth Amendment imposes clear limitations on the State's use of force, prohibiting unreasonable seizures and forbidding the use of violence absent lawful necessity. Likewise, the Fourteenth Amendment prohibits the State from depriving individuals of liberty without due process of law—not as a grant of privileges to the governed, but as a structural prohibition on arbitrary and abusive government conduct. The actions taken against Quincy-Norman: Stewart IV defied these constitutional restraints and must be understood as violations not merely of his interests, but of the lawful boundaries of state power.

6. Following the arrest, CPS/DFPS took custody of Plaintiffs' offspring. Despite having full access to the family's possessions, CPS and DFPS left behind essential items such as clothing, diapers, toothbrushes, and stuffed toys.

7. Later, the State falsely claimed in its emergency petition that the offspring were "found with only shoes on their feet," omitting the fact that their belongings were left behind at the hotel. Plaintiffs possess timestamped photographic evidence of the items abandoned during the removal, contradicting the State's allegations and evidencing a fabrication of neglect claims.

8. The actions of the officers and CPS personnel were executed absent a medical certification, without a judicial finding of immediate or imminent danger, and without verified evidence of present harm—relying instead on speculative concerns unsupported by material facts. This violates the statutory prerequisites outlined in Texas Family Code §§ 262.102 and 262.201, which prohibit removal based on conjecture or anticipated risk absent emergency conditions or a properly issued court order.

9. Defendants unlawfully retained the Plaintiff's offspring after forensic interviews without a court order authorizing removal, exceeding the limited scope of the §261.302 interview authorization and violating due process.

10. On June 24, 2025, while Plaintiff Robinson was engaged in the sacred preparation of her son's final rites in accordance with her faith, Defendants served her with citations and petitions inside a funeral home (Fuller-Sheffield located at: 2808 E Martin Luther King Jr Blvd, Austin, TX 78702)—a deliberately dehumanizing and emotionally abusive act. This conduct weaponized materially false claims, illegally obtained evidence, and defamatory hearsay to manufacture a false narrative of 'unresponsiveness,' escalating state aggression in blatant violation of due process, religious freedom, and basic human dignity.

11. On June 25, 2025 my eldest daughter was examined by Dr. Taylor Dieke (Paloma Pediatrics, Round Rock) a licensed medical professional. Yet mere days later, CPS submitted a petition that falsely characterized *all* the offspring as 'underweight,' 'physically abused,' 'sexually abused.' This direct contradiction between the documented medical assessment and the agency's narrative constitutes not just a factual inaccuracy—but a potentially unlawful act under Texas Family Code § 261.107, which prohibits false reports of child abuse. Where even one child's status is knowingly misrepresented, the entire foundation of the investigation is called into question. Such fabrication violates due process protections under 42 U.S.C. § 1983 and raises serious concerns about the motives and credibility of those involved."

12. Despite persistent and timely requests, Defendants have failed to facilitate in-person visitation—repeatedly deflecting with offers of virtual contact while ignoring or delaying Plaintiffs' formal communications. On July 9, DFPS SI Kathy Heald acknowledged that visitation was possible but claimed it was missed due to an inability to reach Plaintiff. Since then, despite Plaintiff's ongoing presence and clear willingness, no meaningful effort has been made to restore access. The continued evasion of in-person contact, coupled with 23 days of enforced separation, evidences a deliberate pattern of obstruction, undermining Plaintiff's natural and constitutional rights to family unity and parental association.

13. On July 9, 20205, exactly 14 days after the initial emergency removal of Plaintiffs' offspring, the presiding judge, Aurora Martinez Jones, **failed to hold the statutorily required adversary hearing, as mandated by Texas Family Code § 262.201(a).** This statute requires that a full evidentiary hearing be held no later than the 14th day after the date a child is taken into possession by the Department. **No such hearing occurred within the mandated timeframe.** Plaintiffs were thereby denied their right to contest the removal and present evidence, amounting to a deprivation of procedural due process under both state and federal law. The judge's failure to act within her mandatory, ministerial duty cannot be shielded by judicial immunity.

**CLAIMS FOR RELIEF (CAUSES OF ACTION)**

**COUNT I: Violation of Procedural Due Process under the Fourteenth Amendment (42 U.S.C. § 1983)**

Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

Defendants, acting under color of state law, deprived Plaintiffs of their liberty interest in the care, custody, and control of their offspring, a right secured by the Fourteenth Amendment to the United States Constitution, without providing the constitutionally required due process.

Specifically, Defendants failed to conduct a full evidentiary hearing within the **14-day period** mandated by **Texas Family Code § 262.201**, denying Plaintiffs the opportunity to contest the removal of their children with evidence, testimony, or counsel. This procedural safeguard exists to prevent arbitrary and prolonged family separation. Its omission is not a mere technicality, but a core violation of due process. Furthermore, the State repeatedly **relied on uncorroborated hearsay and unsubstantiated allegations** in both initiating and perpetuating the emergency removal. Such reliance on **non-evidentiary claims**—absent cross-examination or evidentiary vetting—contravenes the due process rights guaranteed by the Fourteenth Amendment, and undermines the integrity of judicial determinations. The emergency order and subsequent decisions were entered **without affording Plaintiffs the opportunity to present exculpatory evidence, testimony, or rebuttal**, and were grounded in statements that would be inadmissible under any standard of evidentiary review.

To date, no meaningful evidentiary process has occurred to justify the continued separation. Despite this, Defendants have delayed all visitation between the mother and her children, without a judicial finding of abuse or neglect and without any showing that such contact would pose harm. This prolonged and unexplained denial of contact constitutes an unlawful interference with the mother's constitutionally protected familial relationship.

Defendants also failed to provide timely or proper written notice of the investigation, as required by the **Texas CPS Policy Handbook** and internal DFPS protocols. The Plaintiffs' formal inquiries to the Regional Supervisor requesting clarification, information, and an opportunity to engage in the process were ignored entirely.

These actions, taken together, represent a systemic denial of procedural safeguards guaranteed by the U.S. Constitution and applicable state law, resulting in ongoing harm, trauma, and a loss of irreplaceable time between mother and child.

**COUNT II: Violation of Substantive Due Process under the Fourteenth Amendment (42 U.S.C. § 1983)**

Plaintiffs reallege and incorporate by reference all preceding paragraphs.

The fundamental right to familial integrity is firmly rooted in the traditions and conscience of our nation and is protected by the substantive component of the Fourteenth Amendment. Defendants, acting under color of state law, deprived Plaintiffs of this right through arbitrary, capricious, and conscience-shocking conduct.

There was no emergency or exigent circumstance that justified the summary removal of the offspring without first obtaining judicial authorization. Plaintiffs were prepared to submit documentation, affidavits, and medical records to refute the allegations in real time, but Defendants categorically denied any opportunity to do so.

Moreover, Defendants delayed available, appropriate kinship placements with extended family members—without explanation, hearing, or written justification—despite clear legal requirements under **Texas Family Code § 262.201** and DFPS protocols that mandate preference for such placements.

This deliberate indifference to the Plaintiffs' rights, coupled with the refusal to allow visitation or meaningful participation in the legal process, constitutes a gross abuse of governmental authority and a violation of Plaintiffs' fundamental liberty interest in family unity.

**COUNT III: Violation of Plaintiffs' Right to Family Association (First and Fourteenth Amendments, via 42 U.S.C. § 1983)**

Plaintiffs reallege and incorporate by reference all preceding paragraphs.

The right to familial association and to maintain intimate relationships with one's children is protected by both the **First and Fourteenth Amendments**. Defendants, acting under color of law, deliberately interfered with this right without any compelling justification or narrowly tailored means.

Despite the absence of judicial findings supporting abuse or neglect, and despite no evidence of harm that would preclude contact, Defendants imposed a prolonged and total deprivation of all parental contact. This was done without a court order, without proper notice, and in violation of Plaintiffs' constitutionally protected rights.

Defendants' policies, customs, and decisions—including the refusal to process or respond to written inquiries, refusal to document kinship placement denials, and arbitrary rejection of evidentiary participation—constitute a pattern of conduct aimed at isolating the children from their family without legal justification. These violations are ongoing and represent a continuing injury.

## COUNT IV: Policy, Custom, and Failure to Train / Supervise (Monell Liability)

Plaintiffs reallege and incorporate by reference all preceding paragraphs.

Defendants' actions were not isolated incidents but reflect an official policy, custom, or practice of the Department of Family and Protective Services and related agencies within the State of Texas. These include:

- Failing to hold evidentiary hearings within statutory deadlines;
- Repeated delay of visitation absent court order;
- Ignoring written inquiries and due process requests from parents;
- Refusing lawful kinship placements without documentation or explanation;

 Reliance on hearsay, rumor, and unverified allegations as the basis for emergency action and continued custody;

- Circumventing evidentiary thresholds and failing to notify families in writing.

Such conduct stems from a systemic failure to train, supervise, or discipline agents and staff responsible for family removals, investigations, and placements. This pattern of conduct has resulted in routine deprivation of constitutional rights and foreseeable harm to affected families.

Under **Monell v. Department of Social Services**, 436 U.S. 658 (1978), the State and its agencies are liable for constitutional violations resulting from policies or customs. Plaintiffs assert that these policies were the moving force behind the deprivations described herein.

## COUNT V: Refusal of Lawful Kinship Placement and Coercive Misrepresentation of Policy

Defendants, acting under color of state law, unlawfully refused a lawful and appropriate kinship placement with the Plaintiff's sister—who was both willing and initially prepared to care for the children. This refusal was not based on any formal finding of unfitness, danger, or incapacity, nor supported by documentation, administrative findings, or judicial oversight.

Upon information and belief, DFPS agents, including the assigned investigator, materially misrepresented internal policy guidelines to the Plaintiff's sister, presenting discretionary "suggestions" from the DFPS manual as rigid "requirements" for kinship placement. These misrepresentations had a coercive and chilling effect, ultimately dissuading the relative from accepting placement under false pretenses. Such conduct constitutes bad faith, undermines the statutory preference for familial placement codified in Texas Family Code § 262.201, and reveals a pattern of manipulative behavior inconsistent with both due process and ethical investigative standards.

Rather than seeking the truth or the best interest of the children through lawful means, the agents appear to have operated with an intent to compel compliance and control through deception and coercion. The focus was not on evidentiary truth or proper judicial process, but rather on creating a one-sided narrative of harm through the strategic use of misinformation and pressure tactics—actions that rise to the level of a constitutional violation under 42 U.S.C. § 1983.

**COUNT VI: Irreparable Harm, Emotional Distress, and Familial Disruption Resulting from Constitutional Violations**

As a direct and proximate result of the aforementioned constitutional violations—especially the unlawful removal of children, fabricated or exaggerated allegations, deprivation of due process, and coercive investigatory conduct—Plaintiffs have suffered immense and irreparable emotional trauma, psychological distress, and familial disruption.

The children, for the first time in their lives, were abruptly separated from both their natural mother and father. They were placed into an unfamiliar environment with strangers, denied the stability of their family unit, and subjected to multiple interviews by investigators, attorneys, and agents, none of whom they know or trust. The abrupt loss of their baby brother compounded their trauma, occurring just prior to the forcible separation. This cascading sequence of traumatic events—including armed officers kicking in the door and ripping their mother away, flash banging their father outside a hotel room, and their sudden removal without time to collect familiar belongings such as clothes, toys, or food—constitutes psychological violence and a reckless disregard for the children's emotional well-being and developmental stability.

Plaintiff-mother now exhibits clear symptoms of post-traumatic stress disorder, including chronic sleep disruption, involuntary flashbacks, and persistent anxiety rooted in the fear that her offspring are being mistreated by state-appointed custodians. Plaintiff-father, despite presenting no present danger, was targeted based on an outdated criminal record, and in absence of evidence, was subjected to arbitrary enforcement via trumped-up charges, further exacerbating the family's collapse and undermining lawful protections afforded under both state and federal constitutions.

**COUNT VII: Malicious Prosecution, Deprivation of Liberty Without Probable Cause, and Systemic Misconduct**

Plaintiff-father was maliciously and unlawfully charged with Aggravated Kidnapping under false pretenses and manufactured claims orchestrated by DFPS/CPS agents and third-party actors. This charge was not only unsupported by facts, but also stands in stark contradiction to the circumstances and governing legal standards.

Specifically, agents leveraged the plaintiff's known appointment schedule (with resident maintenance worker) to coordinate an alleged "random knock-and-talk" with local police, occurring while Plaintiff father and Plaintiff mother was inside the temporary residence with their offspring. According to official records and eyewitness affidavits, there was:

- **No weapon present**
- **No physical harm inflicted**
- **No threats made**
- **No unlawful restraint**
- **No intent to prevent lawful government function**

Nonetheless, a maintenance worker—who had no legal understanding of the situation and whose interpretation was influenced by vague instructions—stated allegedly that he was told "not to leave until police were gone," and "stood between him and the door." This alleged statement, absent any act of violence, coercion, or confinement, was inflated into a charge of "Aggravated Kidnapping-Interference Performance"—despite DFPS's own policy manual clearly defining "interference with government function" as a Class B misdemeanor.

This escalation represents a flagrant abuse of discretion, a violation of the Equal Protection Clause, and a deprivation of liberty without probable cause—violating the Fourth and Fourteenth Amendments of the U.S. Constitution. The malicious nature of these actions reflects a systemic pattern of:

- **Targeting individuals based on socio-economic or criminal history rather than current behavior**
- **Employing manipulation and coercion rather than transparency and integrity**
- **Prioritizing force, compliance, and manufactured narratives over facts, truth, and lawful procedure**

These events display a disturbing ethos within DFPS and associated actors—where dignity, due process, and truth are disregarded in favor of authoritarian overreach and unchecked discretion. Plaintiffs seek full redress and accountability for the emotional devastation, reputational injury, financial loss, and systemic oppression endured.

**PRAYER FOR RELIEF**

WHEREFORE, having set forth the facts and demonstrated the State's breach of lawful bounds, Plaintiffs move this Court to issue judgment in their favor and order the following remedies:

1. **Declaratory Relief**
   A declaration that Defendants—each of whom swore an oath to uphold the Constitution of the United States and the Constitution of the State of Texas—violated their solemn constitutional duties by infringing upon Plaintiffs' natural, God-given rights, which preexist government and are secured, not granted, by the Constitution.
   These violations include but are not limited to:
   - unlawful seizure of person(s) without due process;
   - interference with the sacred familial bond;
   - abuse of office through arbitrary and capricious action;
   - reliance on unverified hearsay in place of lawful due process;
   - and failure to act in accordance with their fiduciary obligations as public trustees.
2. **A permanent injunction against Defendants**, prohibiting the continued enforcement or implementation of unlawful customs and practices that infringe upon the **God-given, inalienable rights** of parents, families, and individuals—**including but not limited to** coercion, retaliation, unauthorized removals, misrepresentation of agency policy as binding law, denial of due process, and the systematic circumvention of evidentiary standards. This includes the **misapplication of Texas Family Code § 262** as a catch-all justification for emergency removals, where no immediate danger existed and where § 262 was used as a **loophole** rather than a **lawful, time-sensitive exception.** Defendants' misuse of this provision constitutes an unlawful bypass of judicial scrutiny, and a failure to uphold their sworn duty to protect constitutional limitations on government authority.
3. **Compensatory Damages:** Plaintiffs seek monetary damages in an amount $3,000,000, or such amount as may be determined at trial, to redress the extensive physical, emotional, psychological, and familial harms inflicted upon Plaintiffs as a result of Defendants' unlawful actions; These harms include, but are not limited to:

- **Severe Psychological Distress:** Emotional and mental trauma inflicted by the unlawful, warrantless seizure of Plaintiffs' children by armed officers—without exigent circumstances or due process—constituting an egregious violation of constitutional and parental rights.
- **Chronic Trauma Responses:** Ongoing hypervigilance, panic attacks, fear of being alone, and acute startle responses—especially affecting the mother, who was subjected to a militarized raid in her home.
- **Physical and Somatic Injury:** Plaintiffs suffer from sustained physiological consequences including insomnia, tinnitus, back pain, skin eruptions, and chronic fatigue—conditions that emerged directly after the incident and are stress-related.
- **Irreparable Familial Harm:** A forcible, unjust separation of young children from their family for over 25+ days, inflicting profound emotional harm and developmental disruption. The children had never been apart from their parents before this state-sanctioned trauma.
- **Violation of Sacred Bonds:** Damage to the foundational integrity of the family unit, including attachment injuries and loss of trust, caused by state action under the color of law.
- **Ongoing Need for Remediation:** Plaintiffs now require trauma-informed medical, psychological, and therapeutic care—none of which would have been necessary absent Defendants' unlawful actions.

**I. Injury to Reputation and Family Integrity**

Plaintiffs have suffered severe injury to their reputations, familial bonds, and sense of personal security as a direct result of Defendants' actions, which were rooted in misrepresentations, policy abuses, and unconstitutional conduct. The family's private residence—housing sacred religious artifacts and divination instruments central to their spiritual practice—was unlawfully photographed and desecrated by a property manager acting on behalf of, or in concert with, CPS, in what amounts to a violation of spiritual freedom and privacy rights protected by both state and federal law.

This intrusion, coupled with the baseless allegations asserted in petitions to the court—accusing the Plaintiffs of heinous and defamatory conduct including child abandonment, physical and sexual abuse, and even

human trafficking—has not only slandered their character, but severely compromised their dignity and standing within their community. These accusations were made without evidence, due process, or any legitimate investigation, and appear to be part of a coercive pattern to justify the initial unlawful removal and continued separation of the family.

The home was further violated by the forced entry of armed police, which traumatized all parties and created a hostile, militarized environment without justification. Plaintiff Quincy-norman: Stewart IV was incarcerated for over 25+ days on charges that do not meet the statutory or evidentiary threshold for violence, harm, threat, or restraint of another individual. Yet an exorbitantly high bond was set in contravention of the jurisdiction's average practices for non-violent, non-weapon-related charges—suggesting a punitive motive and deviation from equal protection under law.

The natural mother was left so unsafe and unsettled by these repeated, unlawful violations that she was forced to vacate the premises prematurely, breaking a lease three months ahead of term and losing housing stability. Visits with the children have been arbitrarily denied or limited to virtual formats—an insult to the sanctity of familial connection, and an ongoing injury compounded by the intentional stalling tactics of Defendants. The mother's refusal to accept virtual visits is a matter of spiritual conscience and natural parental right; to deny in-person access under these circumstances is cruel, dehumanizing, and wholly unsupported by any credible evidence of danger or neglect.

This separation has not only destabilized the family unit but has done so through falsehoods, procedural abuses, and defamatory narratives used to rationalize a pre-determined agenda, rather than to serve the actual safety or welfare of the children involved. The harm to Plaintiffs' reputations, emotional well-being, spiritual integrity, and constitutional rights is incalculable—and ongoing.

**II. Loss of Time and Liberty**

Plaintiffs further allege that Defendants, in willful disregard of their constitutional duties and in violation of the Fourteenth Amendment's guarantee of liberty and due process, caused substantial and measurable deprivation of liberty and precious time, including:

- The unlawful and prolonged incarceration of Plaintiff Sayum for twenty-three (23) days, based on unsubstantiated allegations devoid of physical harm, restraint, or criminal intent, and with an inordinately high bond set in violation of both state and federal precedent concerning non-violent, non-weaponized allegations.
- The extrajudicial removal and effective kidnapping of Plaintiffs' minor children for the same 23-day period—without a hearing affording full evidentiary presentation and without proof of imminent harm.
- The forced abandonment of Plaintiffs' home due to ongoing psychological intimidation, unwarranted entries, and retaliatory surveillance by the property manager acting in concert with state actors, leading to early lease termination and the effective exile of the natural mother from her own sanctuary.
- The systemic and strategic isolation of the natural mother from her children, in violation of clearly established familial liberty interests, under the guise of state process and "virtual visitation," while no clear and convincing evidence has been presented to justify such separation.
- The calculated erosion of the family bond through delay, obfuscation, misrepresentation of policies as laws, and the leveraging of procedural ambiguity to compel compliance rather than pursue truth or justice.

This unlawful deprivation of liberty—both physical and existential—raises urgent constitutional questions about the misuse of authority, the abandonment of the presumption of innocence, and the extent to which public institutions now serve agendas that are misaligned with their legal mandates. The injury is not only measured in days, but in the compounded harm of lost moments, missed connection, disrupted identity formation in children, and the shattering of sacred time no process can restore. Plaintiffs seek monetary damages in an amount sufficient to compensate for the extensive physical, psychological, and familial harm suffered, in an amount to be determined at trial.

**JURY DEMAND**

Plaintiffs Quincy-Norman: Stewart IV and Alysha: Robinson hereby demand a trial by jury on all issues so triable as a matter of right pursuant to the Seventh Amendment to the United States Constitution and Rule 38 of the Federal Rules of Civil Procedure. The issues involved herein are of such a nature as to entitle Plaintiffs to a determination by a jury, including but not limited to claims involving the unlawful seizure of minor offspring, violations of procedural due process, and the unlawful exercise of authority in contravention of the Fourth and Fourteenth Amendments

Plaintiffs respectfully request that this matter be set for trial before a jury of their peers in the United States District Court for the Western District of Texas—Austin Division, as soon as is practicable and consistent with the Court's docket.

## VERIFICATION

I, Alysha: Robinson, a living woman and the natural mother of Quincy-Norman: Stewart IV, hereby verify under penalty of perjury under the laws of the united States of America that the foregoing statements are true, correct, and complete to the best of my knowledge, belief, and firsthand experience.

Executed without prejudice and with all rights reserved.

Respectfully and without dishonor,

By: *Alysha Robinson*
Date: 7/18/2025

Alysha: Robinson
Natural Mother, Aggrieved Party

By: *Alysha Robinson*

Alysha: Robinson, as Agent and Next Friend
for Quincy-Norman: Stewart IV, Executor

Date: 7/18/2025

State of Texas
County of Texas

On this day, before me, the undersigned Notary Public, personally appeared Quincy-Norman: Stewart, known to me or satisfactorily proven, and acknowledged that he executed this instrument freely and with full understanding for the purposes stated herein.

IN WITNESS WHEREOF, I hereunto set my hand and seal.

Notary Public Signature: _____
My Commission Expires: May 31st, 2027
Date: 7-18-2025

KELLY DOUGHERTY
Notary ID #130235413
My Commission Expires
May 31, 2027